## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAWRENCE J. KANSKY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **No. 3:20-CV-0043** |
| **v.** | : | |
| | : | |
| **CITY OF WILKES-BARRE,** | : | **(JUDGE MANNION)** |
| **RICHARD HARDING, Individually and** | : | |
| **JOSEPH COFFAY, Individually,** | : | |
| | : | |
| **Defendants.** | : | |

## DEFENDANTS CITY OF WILKES-BARRE, RICHARD HARDING, AND JOSEPH COFFAY'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

Respectfully submitted,

John G. Dean
Mark W. Bufalino
ELLIOTT GREENLEAF & DEAN
15 Public Square, Suite 310
Wilkes-Barre, PA 18701
(570) 371-5290

Attorneys for Defendants City of Wilkes-Barre, Richard Harding and Joseph Coffay

## **Table Of Contents**

Table Of Authorities.................................................................iii

I.  Factual And Procedural Background.................................................3

II.  Question Presented.................................................................5

III.  Argument.........................................................................5

    A.  Rule 12(b)(6) Standard.........................................................5

    B.  Mr. Kansky Fails To State A Fourth Amendment Malicious
        Prosecution Claim..............................................................6

        1.  Mr. Kansky's Complaint Fails To Allege The Personal
             Involvement of Chief Coffay And Officer Harding...............6

        2.  Probable Cause Existed For The Criminal Charges..............8

            a.  Reckless Endangerment.......................................9

            b.  Disorderly Conduct.........................................10

            c.  Unlawful Act Concerning A Furbearer........................11

        3.  Absence Of Malice.............................................11

    C.  Mr. Kansky Does Not Present A Viable First Amendment
        Retaliation Claim.............................................................13

        1.  May 21, 2019 -- Mr. Kansky's 911 Calls Were Not The
            "But-For" Cause Of The Criminal Charges......................13

        2.  Count V Of Mr. Kansky's Complaint Fails For Lack
             Of Adverse Action.............................................16

    D.  Mr. Kanksy Fails To State A Stigma-Plus Claim.......................17

1.   Mr. Kansky Fails To Allege Any Stigmatizing Statements
     By Officer Harding............................................................18

2.   Mr. Kansky's Alleged Interest In Reputation Is Not Liberty
     Or Property Guaranteed By The Fourteenth Amendment......18

3.   Chief Coffay's Statement Was Not False...........................20

4.   Mr. Kansky's Preliminary Hearing Afforded Him Sufficient
     Due Process...................................................................21

E.   Mr. Kansky Does Not State A Plausible <u>Monell</u> Claim Against
     The City.........................................................................22

F.   Chief Coffay And Officer Harding Have Qualified Immunity On
     The Claimed Constitutional Violations...............................25

     1.   There Is No Violation Of A Federal Or Constitutional
          Right........................................................................25

     2.   Mr. Kansky Cannot Meet The Clearly Established
          Prong.......................................................................26

G.   Mr. Kansky Cannot Recover Punitive Damages Against The
     City.................................................................................28

H.   The § 1983 Claims Should Be Dismissed With Prejudice.............28

I.   Mr. Kansky's State Law Claims Should Be Dismissed.................29

     1.   Supplemental Jurisdiction Over The State Law Claims
          Should Be Declined....................................................29

     2.   Regardless, Mr. Kansky Does Not Plead A Viable State
          Law Cause Of Action.................................................30

IV.   Conclusion.............................................................................34

# TABLE OF AUTHORITIES

## Cases

Allah v. Seiverling,
    229 F.3d 220 (3d Cir. 2000)............................................................16

Anderson v. Perez,
    677 Fed. Appx. 49 (3d Cir. 2017)...........................................32-33

Ashcroft v. Iqbal,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)........................5, 14

Association of N.J. Rifle & Pistol Clubs, Inc. v. Attorney General of N.J.,
    910 F.3d 106 (3d Cir. 2018)................................................................15

Bandy v. Hill,
    No. 18-0425, 2019 WL 1259155 (E.D. Pa. Mar. 18, 2019)....................12

Baraka v. McGreevey,
    481 F.3d 187 (3d Cir. 2007)...........................................................29-30

Bassetti v. Boyertown Area Sch. Dist.,
    No 17-1137, 2017 WL 3480977 (E.D. Pa. Aug. 14, 2017)....................24

Bell Atl. Corp. v. Twombly,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)...................5, 8

Black Water Marsh, LLC v. Roger C. Ferriss Props., Inc.,
    No. 16-804, 2017 WL 5900748 (La. Ct. App. Sept. 6, 2017)..................11

Blakney v. City of Philadelphia,
    No. 12-6300, 2013 WL 2411409 (E.D. Pa. June 4, 2013)....................24

Boseman v. Upper Providence Twp.,
    680 Fed. Appx. 65 (3d Cir. 2017)...............................................12

Bryan v. United States,
    913 F.3d 356 (3d Cir. 2019)......................................................26

Budhun v. Reading Hosp. & Med. Ctr.,
    765 F.3d 245 (3d Cir. 2014)..................................................3, 28-29

Burgos v. Canino,
    358 Fed. Appx. 302 (3d Cir. 2009).................................................17

Carroll v. Lackawanna Cty.,
    No. 12-2308, 2015 WL 5512703 (M.D. Pa. Sept. 16, 2015)..................21

City of Newport v. Fact Concerts, Inc.,
    453 US 247, 101 S. Ct. 274, 869 L. Ed. 2d 616 (1981)........................28

Commonwealth v. Cordoba,
    902 A.2d 1280 (Pa. Super. 2006).....................................................9

Commonwealth v. Robinson,
    No. 1735 EDA 2017, 2018 WL 1528436
    (Pa. Super. Mar. 29, 2018)......................................................10-11

Commonwealth v. Vogelsong,
    90 A.3d 717 (Pa. Super. 2014).......................................................9

Connelly v. Lane Constr. Corp.,
    809 F.3d 780 (3d Cir. 2016)...........................................................5

Curry v. Yachera,
    835 F.3d 373 (3d Cir. 2016)...........................................................6

D & D Assocs., Inc. v. Board of Educ. of N. Plainfield,
    552 Fed. Appx. 110 (3d Cir. 2014)..................................................19

Dempsky v. Double,
    386 Pa. 542, 126 A.2d 915 (1956)...................................................32

District of Columbia v. Heller,
    554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008)......................16

Drake v. Filko,
    724 F.3d 426 (3d Cir.2013).......................................................15-16

Dress v. Falls Twp.,
    No. 16-4918, 2017 WL 2215270 (E.D. Pa. May 19, 2017).....................7

Ersek v. Township of Springfield,
    102 F.3d 79 (3d Cir. 1996).........................................................17

Estate of Roman v. City of Newark,
    914 F.3d 789 (3d Cir. 2019)......................................................22

Feldman v. Lafayette Green Condo. Ass'n,
    806 A.2d 497 (Pa. Commw. 2002)..............................................31

Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.,
    482 F.3d 247 (3d Cir. 2007)......................................................28

Forrest v. Parry,
    930 F.3d 93 (3d Cir. 2019).....................................................22-23

Good v. City of Sunbury,
    352 Fed. Appx. 688 (3d Cir. 2009)...........................................2,20

Graboff v. Colleran Firm,
    744 F.3d 128 (3d Cir. 2014)......................................................33

Graham v. City of Philadelphia,
    402 F.3d 139 (3d Cir. 2005)......................................................21

Hammond v. City of Wilkes-Barre,
    No. 13-2322, 2014 WL 2592833 (M.D. Pa. June 10, 2014)...................24

Hartman v. Moore,
    547 U.S. 250, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006)..............2, 14-15

Hill v. Borough of Kutztown,
    455 F.3d 225 (3d Cir. 2006).................................................17-19

Ianuale v. Keyport Twp.,
    No. 15-8256, 2016 WL 5955527 (D.N.J. Oct. 13, 2016)......................24

Karolski v. Davis,
    No. 15-1101, 2018 WL 1933680 (W.D. Pa. Apr. 24, 2018)....................9

Keziah v. Superintendent Kerestes,
    No. 15-2171, 2015 WL 8488426 (M.D. Pa. Dec. 10, 2015)...........2, 17, 27

King v. Deputy Attorney General of Del.,
    616 Fed. Appx. 491 (3d Cir. 2015)...................................12

Kneipp v. Tedder,
    95 F.3d 1199 (3d Cir. 1996)........................................24

Lippay v. Christos,
    996 F.2d 1490 (3d Cir.1993)........................................12

Lockett v. Pennsylvania Dep't of Corr.,
    529 Fed. Appx. 294 (3d Cir. 2013).................................2,21

Mammaro v. New Jersey Div. of Child Prot. & Permanency,
    814 F.3d 164 (3d Cir. 2016)........................................26

Mann v. Palmerton Area Sch. Dist.,
    872 F.3d 165 (3d Cir. 2017)........................................26

McBride v. State,
    128 N.E.3d 531 (Ind. Ct. App. 2019)...............................16

McCarthy v. Darman,
    372 Fed. Appx. 346 (3d Cir. 2010)................................21

McCarthy v. Darman,
    No. 07–3958, 2009 WL 1812788 (E.D. Pa. June 24, 2009)...........20-21

McGreevy v. Stoup,
    413 F.3d 359 (3d Cir. 2005)........................................23

Merkle v. Upper Dublin Sch. Dist.,
    211 F.3d 782 (3d Cir. 2000)......................................30-31

Mesadieu v. City of Elizabeth,
　　　No. 17-3252, 2019 WL 2385901 (D.N.J. June 6, 2019)..........................17

Mirabella v. Villard,
　　　853 F.3d 641 (3d Cir. 2017)...............................................................13-14

Monell v. Department of Soc. Servs. of the City of N.Y.,
　　　436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)......................22-24

Montgomery v. De Simone,
　　　159 F.3d 120 (3d Cir. 1998)....................................................................22

Nieves v. Bartlett,
　　　139 S. Ct. 1715, 204 L. Ed. 2d 1 (2019)............................................14-15

Oliver v. Roquet,
　　　858 F.3d 180 (3d Cir. 2017)....................................................................14

Orelski v. Bowers,
　　　303 Fed. Appx. 93 (3d Cir. 2008)...........................................................20

Otto v. Williams,
　　　704 Fed. Appx. 50 (3d Cir. 2017)...............................................2-3, 21-22

Paul v. Davis,
　　　424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)...........2-3, 18-19, 28

Pearson v. Callahan,
　　　555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).........................25

Pennsylvania State Police v. McPherson,
　　　831 A.2d 800 (Pa. Commw. 2003)........................................................10-11

Plumhoff v. Rickard,
　　　572 U.S. 765, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014).....................26

Randall v. Facebook, Inc.,
　　　718 Fed. Appx. 99 (3d Cir. 2017)............................................................19

Saucier v. Katz,
    533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)................25-26

Schmidt v. Skolas,
    770 F.3d 241 (3d Cir. 2014).........................................................4

Sharp v. Johnson,
    669 F.3d 144 (3d Cir. 2012)........................................................25

Smith v. Roberts,
    No. 18-1957, 2019 WL 3838316 (M.D. Pa. Aug. 15, 2019).................33

Stile v. Fed. Bureau of Prisons,
    No. 16-3832, 2017 WL 2656646 (D.N.J. June 19, 2017).....................17

Spady v. Bethlehem Area Sch. Dist.,
    800 F.3d 633 (3d Cir. 2015)....................................................26-27

Tobin v. Badamo,
    No. 00-783, 2000 WL 1880262 (M.D. Pa. Dec. 20, 2000)...................22

Thomas v. City of Philadelphia,
    290 F. Supp. 3d 371 (E.D. Pa. 2018)...............................................7

Thomas v. Independence Twp.,
    463 F.3d 285 (3d Cir. 2006).......................................................13

Trippett v. Pennsylvania,
    No. 16-5467, 2017 WL 4347662 (E.D. Pa. Sept. 29, 2017)..............31-32

Verrecchia v. City of Philadelphia,
    No. 16-284, 2017 WL 264388 (E.D. Pa. Jan. 19, 2017)........................6

Villarosa v. North Coventry Twp.,
    711 Fed. Appx. 92 (3d Cir. 2017)..........................................2, 8, 10

Wilson v. Russo,
    212 F.3d 781 (3d Cir. 2000).........................................................8

Wisconsin v. Constantineau,
    400 U.S. 433, 91 S. Ct. 507, 27 L. Ed. 2d 515 (1971)...........................17

Zimmerman v. Corbett,
    873 F.3d 414 (3d Cir. 2017)............................................................8

Zlomsowitch v. E. Penn Twp.,
    No. 11-2131, 2012 WL 1569633 (M.D. Pa. May 3, 2012)....................30

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................3, 5

**Statutes**

18 Pa. C.S.A. § 2705...................................................................9

18 Pa. C.S.A. § 5503..................................................................10

34 Pa. C.S.A. § 102...................................................................11

34 Pa. C.S.A. § 2361(a)(1)...........................................................11

42 Pa. C.S. §8343(a)...............................................................31-32

42 Pa. C.S.A. § 8541.................................................................30

42 Pa. C.S.A. § 8542.................................................................30

42 Pa. C.S.A. § 8550.................................................................32

28 U.S.C. § 1367......................................................................29

42 U.S.C. § 1983....................................................................6, 29

Lawrence Kansky ("Mr. Kansky"), a licensed Pennsylvania attorney, allegedly encountered an injured raccoon along West North Street in the City of Wilkes-Barre (the "City") on the morning of May 21, 2019 (the "raccoon incident"). (See Doc. 1, ¶ 10). Mr. Kansky called 911 for assistance, but hours later law enforcement had still not responded. (See id.). Mr. Kansky then shot the raccoon twice. (See id. at ¶ 11). Not surprisingly, criminal charges were filed against Mr. Kansky for twice discharging a firearm in the City in broad daylight (the "criminal charges"). (See id. at ¶ 12). The criminal charges were ultimately dismissed by a magisterial district judge. (See id. at ¶ 15). Mr. Kansky now claims -- despite openly acknowledging that he twice discharged his firearm in public -- that the criminal charges were maliciously filed against him, that the criminal charges were brought because he called 911 seeking assistance for an injured raccoon and not for firing his weapon in public, that his reputation was impaired in light of the criminal charges filed, and he was retaliated against when he was allegedly "yelled and screamed" at by a law enforcement officer three (3) months after the charges were dismissed. (See id. at Counts I-V).

Mr. Kansky's claims fail factually, legally, and logically. (See Doc. 1, generally). Mr. Kansky cannot prevail on his First Amendment retaliation claim premised on the 911 calls because the facts pled in the complaint leave no doubt that the "but-for" cause for the filing of the criminal charges was Mr. Kansky's

discharge of a firearm along a public street. See Hartman v. Moore, 547 U.S. 250, 259-260, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006). Mr. Kansky's second First Amendment retaliation claim fairs no better since being yelled or screamed at does not rise to the level of constitutionally cognizable adverse action. See Keziah v. Superintendent Kerestes, No. 15-2171, 2015 WL 8488426, at *2 (M.D. Pa. Dec. 10, 2015)(Mannion, J.). Nor does Mr. Kansky have a plausible Fourth Amendment malicious prosecution cause of action because probable cause existed for the criminal charges and a reasonable official on the facts pled here would conclude that there was a "fair probability" that Mr. Kansky committed the crimes with which he was charged. See Villarosa v. North Coventry Twp., 711 Fed. Appx. 92, 95-96 (3d Cir. 2017). Finally, Mr. Kansky's Fourteenth Amendment stigma-plus claim cannot survive because: (1) reputational injury resulting from the dismissal of criminal charges does not by itself make out such a claim, see Paul v. Davis, 424 U.S. 693, 698-99, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976); (2) Mr. Kansky does not plead that Defendants made any false statements or that he was deprived of a recognized "plus" interest, see, e.g., Lockett v. Pennsylvania Dep't of Corr., 529 Fed. Appx. 294, 296-97 (3d Cir. 2013); Good v. City of Sunbury, 352 Fed. Appx. 688, 691-92 (3d Cir. 2009); and (3) the preliminary hearing held in connection with the criminal charges afforded Mr. Kanksy with sufficient due process to clear his name. See Otto v. Williams, 704 Fed. Appx. 50, 55 (3d Cir.

2

2017).   In short, the flaws in Mr. Kansky's complaint are so numerous and fundamental to the causes of action he advances that they cannot be cured by amendment.   See Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 259 (3d Cir. 2014).

For these reasons, among others, Mr. Kansky fails to state a claim upon which relief can be granted.   Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants the City, Richard Harding ("Officer Harding"), and Joseph Coffay ("Chief Coffay")(collectively, where appropriate, "Defendants"), respectfully request that their motion to dismiss be granted and Mr. Kansky's federal law causes of action be dismissed with prejudice.

## I.   **Factual And Procedural Background.**

Mr. Kansky is alleged to be a holder of a license to carry a firearm issued by the Luzerne County Sheriff's Department. (See Doc. 1, ¶ 9).   On May 21, 2019, Mr. Kansky contacted 911 several times for assistance related to an injured raccoon near 72 W. North Street in the Cirty. (See id. at ¶ 10).   Mr. Kansky ultimately shot the raccoon twice with his firearm after law enforcement did not respond to his calls. (See id. at ¶ 11; see also Ex. "2" to Defendants' Appendix of Exhibits ("Defendants' Appendix")).

Mr. Kansky was charged by Officer Harding, a City police officer, with two (2) counts of recklessly endangering another person, disorderly conduct, and

3

unlawful acts concerning the taking of furbearers. (See id. at ¶ 12). Mr. Kansky complained of such charges to a local newspaper. (See id. at ¶¶ 13-14).[1] In a statement following the filing of charges against Mr. Kansky, Chief Coffay, the City's Chief of Police, observed that Mr. Kansky "fired a weapon in public without regard for the safety of anyone that was around, which caused two victims to call 911 because they were alarmed." (Id. at ¶ 36). The charges against Mr. Kansky were dismissed by a magisterial district judge on September 12, 2019. (See id. at ¶ 15; see also Ex. "2" to Defendants' Appendix).

On December 31, 2019, Officer Harding, while in uniform, encountered Mr. Kansky, allegedly "yelled and screamed" at Mr. Kansky, and called Mr. Kansky "a liar, no hero, and [that he] got lucky." (Id. at ¶¶ 17-18). Mr. Kansky called 911 and reported Officer Harding's behavior. (See id. at ¶ 20).

Based on the foregoing, Mr. Kansky filed the complaint in this Court on January 9, 2020 asserting the following claims: First Amendment retaliation (Count I); malicious prosecution under the Fourth Amendment and state law (Count II); stigma-plus (Count III); false light and defamation (Count IV); and

---

[1]    In his complaint, Mr. Kansky references various newspaper articles and provides hyperlinks to those articles, but he did not attach them as exhibits to his complaint. (See, e.g., Doc. 1, ¶¶ 13-15, 36). Defendants have, however, included those articles in their supporting appendix. (See Defendants' Appendix, generally). Because they are "integral to" and "expressly relied upon in the complaint", these news articles can be considered on the instant motion. See Schmidt v. Skolas, 770 F.3d 241, 249-50 (3d Cir. 2014).

First Amendment retaliation (Count V). (<u>See</u> Doc. 1, <u>generally</u>). Count IV is against Officer Harding and Chief Coffay only, while all other claims are asserted against all Defendants. (<u>See</u> <u>id</u>. at Counts I-V).

## II.   <u>Question Presented.</u>

Should Mr. Kansky's complaint be dismissed for failure to state a claim upon which relief can be granted?

Suggested Answer:        Yes.

## III.   <u>Argument.</u>

### A.    <u>Rule 12(b)(6) Standard.</u>

A motion to dismiss for failure to state a claim is authorized by Federal Rule of Civil Procedure 12(b)(6). <u>See</u> Fed. R. Civ. P. 12(b)(6). The sufficiency of a complaint is governed by the "pleading regime" set forth by the Supreme Court in <u>Iqbal</u> and <u>Twombly</u>. <u>Connelly v. Lane Constr. Corp.</u>, 809 F.3d 780, 787 (3d Cir. 2016)(<u>citing</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (<u>quoting</u> <u>Twombly</u>, 550 U.S. at 570).

**B.   Mr. Kansky Fails To State A Fourth Amendment Malicious Prosecution Claim.**

      **1.   Mr. Kansky's Complaint Fails To Allege The Personal Involvement Of Chief Coffay And Officer Harding.**

Count II of the complaint contains, <u>inter alia</u>, a Fourth Amendment malicious prosecution claim.   To state a 42 U.S.C. § 1983 claim for malicious prosecution under the Fourth Amendment, a plaintiff must show that:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

<u>Curry v. Yachera</u>, 835 F.3d 373, 379-80 (3d Cir. 2016).   Mr. Kansky's Fourth Amendment malicious prosecution claim fails on several grounds.

Nothing in Mr. Kansky's complaint suggests that Chief Coffay participated in the filing of criminal charges against Mr. Kansky.   (<u>See</u> Doc. 1, <u>generally</u>). Because liability against Chief Coffay cannot be predicated on a theory of <u>respondeat superior</u>, the malicious prosecution claim as to him should be dismissed for lack of personal involvement.   <u>See</u> <u>Verrecchia v. City of Philadelphia</u>, No. 16-284, 2017 WL 264388, at *5 (E.D. Pa. Jan. 19, 2017).

Similarly, Mr. Kansky does not allege any facts to sustain such a cause of action against Officer Harding.   (<u>See</u> Doc. 1, <u>generally</u>).   At the outset, it should be

6

noted that "[p]rosecutors, not police, are generally responsible for initiating criminal proceedings." Dress v. Falls Twp., No. 16-4918, 2017 WL 2215270, at *3 (E.D. Pa. May 19, 2017)(citation omitted). Thus, "[t]o hold a police officer responsible for initiating a criminal proceeding, a plaintiff needs to demonstrate that the officer knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed decision." Id. (citations and internal quotation marks omitted); see also Thomas v. City of Philadelphia, 290 F. Supp. 3d 371, 379 (E.D. Pa. 2018)("An officer can be liable for malicious prosecution if he fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute.").

Mr. Kansky pleads no such facts here.  At most, Mr. Kansky contends that Officer Harding initiated the charges against him.  (See Doc. 1, ¶ 12).  The complaint and the articles Mr. Kansky cites therein, however, make clear that the Luzerne County District Attorney's Office prosecuted the case against him.  (See Ex. "2" to Defendants' Appendix).  Moreover, Mr. Kansky does not identify any facts from which it can be inferred that Officer Harding provided false information to the prosecutor or otherwise interfered with the prosecution of the charges.  (See id., generally).  Mr. Kansky simply avers in conclusory fashion that Officer

Harding "omitted material truthful facts" that would have prevented the criminal charges from being filed if they had been disclosed. (See id. at ¶ 30). Absent from the complaint though is any factual support for this conclusory allegation. (See id., generally). And it is well-settled that conclusory averments such as those in Paragraph 30 of the complaint are not sufficient to sustain a cause of action. See Twombly, 550 U.S. at 555.

### 2.    Probable Cause Existed For The Criminal Charges.

Mr. Kansky's Fourth Amendment claim fails because the facts pled do not suggest an absence of probable cause for the charges filed. "Probable cause exists if the facts and circumstances within [the Officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that a crime had been committed." Zimmerman v. Corbett, 873 F.3d 414, 418 (3d Cir. 2017)(alterations in original)(citation and quotation omitted). In other words, probable cause is present so long as there is a "fair probability that the person committed the crime at issue." Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000)(internal quotation marks and citation omitted). The fact that the criminal charges were dismissed by a magisterial district judge does not alone reflect that the criminal charges were initiated without probable cause. See, e.g., Villarosa, 711 Fed. Appx. at 95-96 (affirming dismissal of malicious prosecution claim where one charge was dismissed following a preliminary hearing and a nolle prosequi

was entered on the remaining charge); see also Karolski v. Davis, No. 15-1101, 2018 WL 1933680, at *4 (W.D. Pa. Apr. 24, 2018)("The fact that the charges were dismissed at the preliminary phase of Plaintiff's criminal case does not negate the existence of probable cause to support his initial arrest and detention.").

### a.   **Reckless Endangerment.**

Reckless endangerment under Pennsylvania law is committed when a person "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."  18 Pa. C.S.A. § 2705.  To make out a prima facie case for a violation of § 2705, "the Commonwealth need only establish that the defendant's conduct placed or may have placed another in danger of serious bodily injury or death." Commonwealth v. Vogelsong, 90 A.3d 717, 721 (Pa. Super. 2014)(quoting Commonwealth v. Cordoba, 902 A.2d 1280, 1288-1289 (Pa. Super. 2006)).  In the matter sub judice, Mr. Kansky's complaint and the articles he relies upon reflect that: (1) he discharged his firearm twice on a City street in the middle of the afternoon; (2) 911 received calls from two other individuals indicating that Mr. Kansky had fired a gun around 1:50 p.m. on W. North Street in the City; and (3) a citizen observed Mr. Kansky brandishing his weapon on the sidewalk.  (See Doc. 1, ¶ 11; Exs. "1"-"3" to Defendants' Appendix).  Clearly, discharging a firearm during the day along a public street "may" place another in danger. See 18 Pa. C.S.A. § 2705.  Thus, on these facts, a reasonable official could

9

conclude that there was a "fair probability" that Mr. Kansky committed the crime of reckless endangerment when he discharged his weapon twice on a City street in broad daylight.  See Villarosa, 711 Fed. Appx. at 96; see also Commonwealth v. Robinson, No. 1735 EDA 2017, 2018 WL 1528436, at *3 (Pa. Super. Mar. 29, 2018)(affirming recklessly endangering conviction where the defendant fired a gun directly into the air outside a bar even though he "did not point or shoot the firearm in the direction of any single person").

### b.   Disorderly Conduct.

Pennsylvania's disorderly conduct statute provides in pertinent part:

> (a)   Offense defined.--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> (1)   engages in fighting or threatening, or in violent or tumultuous behavior;
> . . .
>
> (c)   Definition.--As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa. C.S.A. § 5503.  A reasonable officer could find that Mr. Kansky "recklessly creat[ed] a risk" of causing "public" "alarm" by engaging in "violent" "behavior here, i.e., discharging a firearm on a City street.  See Pennsylvania State Police v.

McPherson, 831 A.2d 800, 807 (Pa. Commw. 2003)("violent behavior" includes "as a necessary element the use or attempted use of physical force"); see also Robinson, 2018 WL 1528436, at *3 (defendant found guilty of disorderly conduct when he fired his gun into the air outside a bar).

### c.   Unlawful Act Concerning A Furbearer.

34 Pa. C.S.A. § 2361(a)(1) makes it unlawful for any person to: "[t]ake, kill, wound . . . any furbearers except during the open furtaking season and in such numbers or by such methods as fixed by the commission or this title." 34 Pa. C.S.A. § 2361(a)(1). A raccoon is a "furbearer" under the Pennsylvania Game and Wildlife Code. See 34 Pa. C.S.A. § 102. Hunting season for raccoons was closed on May 21, 2019. See https://www.media.pa.gov/Pages/Game-Commission-Details.aspx?newsid=208 (last visited January 22, 2020)(open hunting season for raccoons was October 20, 2018 to February 16, 2019).[2] Because Mr. Kansky admittedly shot a raccoon out of open season, an officer could reasonably conclude that Mr. Kansky violated § 2361(a)(1).

### 3.   Absence Of Malice.

Lastly, Mr. Kansky's Fourth Amendment malicious prosecution claim fails because Mr. Kanksy does not aver any facts to show that Officer Harding acted

---

[2]   This Court can take judicial notice of the open season for which it is lawful to hunt raccoons. See, e.g., Black Water Marsh, LLC v. Roger C. Ferriss Props., Inc., No. 16-804, 2017 WL 5900748, at *5 (La. Ct. App. Sept. 6, 2017).

maliciously or for an improper purpose. "Malice means spite or ill-will, the use of a prosecution for an extraneous purpose, or a lack of belief in the guilt of the accused." King v. Deputy Attorney General of Del., 616 Fed. Appx. 491, 495 n.6 (3d Cir. 2015)(citing Lippay v. Christos, 996 F.2d 1490, 1503 (3d Cir.1993)).

The complaint does not support a plausible inference that the criminal charges against Mr. Kansky were the product of malice. (See Doc. 1, generally). For one, Mr. Kansky wholly acknowledges that he was only charged criminally after he twice discharged his firearm on a City street, which negates the suggestion that Officer Harding acted with ill will. (See id. at ¶¶ 10-12; see also Ex. "2" to Defendants' Appendix). Further, conclusory allegations of malice like those relied on by Mr. Kansky here, (see Doc. 1, ¶ 32), are nothing more than a "threadbare recital of an element of the cause of action [that] cannot withstand a motion to dismiss." Boseman v. Upper Providence Twp., 680 Fed. Appx. 65, 69 (3d Cir. 2017); Bandy v. Hill, No. 18-0425, 2019 WL 1259155, at *9 (E.D. Pa. Mar. 18, 2019). At most, the complaint alleges that Officer Harding displayed animosity towards Mr. Kansky in December 2019 -- over six (6) months after the criminal charges were filed and three (3) months after the charges were dismissed. (See Doc. 1, ¶¶ 10-12, 17-20). Thus, these actions do not relate to Mr. Kansky's prosecution, nor do they reflect that Officer Harding acted improperly or with ill-motive during the pendency of Mr. Kansky's prosecution. (See id.).

Count II fails as a matter of law.  It should be dismissed.

## C. Mr. Kansky Does Not Present A Viable First Amendment Retaliation Claim.

Mr. Kansky's complaint purports to set forth two (2) separate First Amendment causes of action.  (See Doc. 1, Count I, Count V).

> To plead retaliation for the exercise of First Amendment rights, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."

Mirabella v. Villard, 853 F.3d 641, 649 (3d Cir. 2017)(quoting Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006)).

### 1. May 21, 2019 -- Mr. Kansky's 911 Calls Were Not The "But-For" Cause Of The Criminal Charges.

In Count I, Mr. Kansky contends that he was retaliated against in violation of the First Amendment after he called 911 several times on May 21, 2019 seeking law enforcement assistance regarding the injured raccoon.  (See Doc. 1, ¶¶ 22-23). Mr. Kansky appears to contend that he was criminally charged in retaliation for his 911 calls.  (See id. at Count I).

Simply put, Mr. Kansky has not plausibly pled the existence of a causal link between his protected conduct and the claimed retaliatory action.  (See id.).  "The third element of a retaliation claim requires a causal link between a plaintiff's

constitutionally protected activity and the retaliatory act. The required link is 'but-for' causation." Mirabella, 853 F.3d at 651 (citations and quotation omitted). The complaint itself makes clear that Mr. Kansky's 911 calls were not the cause of the criminal charges filed against him. (See Doc. 1, generally). Rather, and quite clearly, the but-for cause of the accusation of criminal wrongdoing by Mr. Kansky was his discharge of a firearm on a City street in broad daylight. (See Doc. 1, ¶¶ 10-11). Since there is no plausible basis to find on these facts that Mr. Kansky's alleged injury was caused by anything other than the discharge of his firearm, Count I should be dismissed for lack of causation. See, e.g., Oliver v. Roquet, 858 F.3d 180, 194-96 (3d Cir. 2017)(affirming dismissal of First Amendment retaliation claim for failure to adequately plead causation); see also Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

Mr. Kansky's claim in Count I may alternatively be characterized as a retaliatory prosecution claim. (See Doc. 1, Count I). A claim on that theory fails as well. See Hartman, 547 U.S. at 259-260. For one, such a claim requires but-for causation, which is absent in this case. See id. at 260, ("the plaintiff in a retaliatory-prosecution claim must prove the elements of retaliatory animus as the cause of injury"); see also Nieves v. Bartlett, - - - U.S. - - -, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019)("It is not enough to show that an official acted with a

retaliatory motive and that the plaintiff was injured - the motive must cause the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."). Second, insofar as Count I is premised on a retaliatory prosecution theory, Mr. Kansky must allege the absence of probable cause. See Hartman, 547 U.S. at 263 ("The connection, to be alleged and shown, is the absence of probable cause."). For reasons explained in detail above with respect to Mr. Kansky's Fourth Amendment malicious prosecution claim, probable cause existed for all three substantive offenses with which Mr. Kansky was charged with committing. See supra Part III.B.2. Thus, Mr. Kansky does not have a viable First Amendment retaliatory prosecution cause of action, and Count I should be dismissed.

Mr. Kansky also suggests in Count I that retaliatory action was taken against him for "having exercised his constitutional right to bear arms[.]" (Doc. 1, ¶ 24). But Mr. Kansky does not plead a Second Amendment retaliation claim in the complaint. (See id., generally). Moreover, the "core" of the Second Amendment right is for "law-abiding citizens to possess non-dangerous weapons for self-defense in the home." Association of N.J. Rifle & Pistol Clubs, Inc. v. Attorney General of N.J., 910 F.3d 106, 117 (3d Cir. 2018)(citation omitted); see also Drake v. Filko, 724 F.3d 426, 436 (3d Cir. 2013)("[i]f the Second Amendment protects the right to carry a handgun outside the home for self-defense at all, that right is

15

not part of the core of the Amendment."). The rights conferred by the Second Amendment are not "unlimited," and do not permit the use of a firearm "for whatever purpose." District of Columbia v. Heller, 554 U.S. 570, 627, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). Mr. Kansky has no basis in law for contending that the criminal charges filed against him here for discharging a firearm in public violated his constitutional rights. See Heller, 554 U.S. at 635 (observing that the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home"); see also McBride v. State, 128 N.E.3d 531, 539 n.4 (Ind. Ct. App. 2019)("although a person has the right to own guns, he has no right to misuse them").

### 2.   Count V Of Mr. Kansky's Complaint Fails For Lack Of Adverse Action.

In his second First Amendment retaliation cause of action, Count V, Mr. Kanksy seemingly claims that his rights were violated when Officer Harding "yelled and screamed" at him because he successfully defended against the criminal charges lodged against him. (See id. at Count V). An actionable First Amendment claim, however, requires conduct that would deter a person of ordinary firmness from exercising his or her constitutional rights. See Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). And, as this Court pointed out before, "it is well settled that verbal threats or verbal harassment do not constitute adverse action for purposes of stating a retaliation claim under the First

Amendment." <u>Keziah</u>, 2015 WL 8488426, at *2.  Ample other authority agrees that being yelled, screamed, or cursed at does not amount to constitutionally cognizable adverse action.  See <u>Burgos v. Canino</u>, 358 Fed. Appx. 302, 306 (3d Cir. 2009)("threats alone do not constitute retaliation"); <u>Mesadieu v. City of Elizabeth</u>, No. 17-3252, 2019 WL 2385901, at *4 (D.N.J. June 6, 2019)("The alleged yelling and threats do not sufficiently constitute cognizable adverse actions."); <u>Stile v. Federal Bureau of Prisons</u>, No. 16-3832, 2017 WL 2656646, at *4 (D.N.J. June 19, 2017)("Colina's alleged conduct of approaching Plaintiff when Plaintiff was trying to avoid him, cursing Plaintiff for suing him, and stating that they will see who gets the last laugh is insufficient to deter a person of ordinary firmness from exercising a constitutional right.").  Count V does not state a claim.

### D.   **Mr. Kansky Fails To State A Stigma-Plus Claim.**

The Supreme Court, in <u>Wisconsin v. Constantineau</u>, 400 U.S. 433, 91 S. Ct. 507, 27 L. Ed. 2d 515 (1971), recognized that an individual has a protectable liberty interest in one's reputation.  See <u>Ersek v. Township of Springfield</u>, 102 F.3d 79, 83 (3d Cir. 1996).  However, "reputation alone is not an interest protected by the Due Process Clause." <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 236 (3d Cir. 2006).  "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus

deprivation of some additional right or interest." Id. (citing Davis, 424 U.S. at 701). Mr. Kansky's stigma-plus claim fails for any of the following reasons.

### 1.    Mr. Kansky Fails To Allege Any Stigmatizing Statements Made By Officer Harding.

First, Mr. Kansky does not identify any stigmatizing statements made by Officer Harding. (See Doc. 1, generally). Count III against Officer Harding should therefore be dismissed.

### 2.    Mr. Kansky's Alleged Interest In Reputation Is Not Liberty Or Property Guaranteed By The Fourteenth Amendment.

Further, Mr. Kansky's stigma-plus claim, at its core, implies that his reputation was infringed by criminal charges against him that were ultimately dismissed. (*See* Doc. 1, generally). That theory is foreclosed by the Supreme Court's decision in Davis. See Davis, 424 U.S. at 697. There, the respondent claimed that he was deprived of his protected liberty interest under the Fourteenth Amendment when the petitioners, two police chiefs, caused his picture to be placed on a flyer identifying him as an "Active Shoplifter[.]" Id. at 694-696. "Shortly after circulation of the flyer the charge against respondent was finally dismissed by a judge of the Louisville Police Court." Id. at 696. The Davis Court rejected the respondent's view that "a person arrested by law enforcement officers who announce that they believe such person to be responsible for a particular crime in order to calm the fears of an aroused populace, presumably obtains a claim against

such officers under § 1983." Id. at 698.  The Court found it "hard to perceive any logical stopping place to such a line of reasoning." Id. at 698-99.  Therefore, the Supreme Court ultimately concluded that a charge of defamation "standing alone and apart from any other governmental action with respect to him" does not state a claim under the Fourteenth Amendment. Id. at 964; see also id. at 712 ("we hold that the interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law.").  Thus, Davis compels dismissal of Mr. Kansky's stigma-plus claim.  See also Randall v. Facebook, Inc., 718 Fed. Appx. 99, 101 (3d Cir. 2017).

Related to that point, a viable liberty interest in reputation claim as asserted by Mr. Kansky in Count III requires the deprivation of a "plus" interest. See Hill, 455 F.3d at 236.  Reputational damage is thus not actionable unless "it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." D & D Assocs., Inc. v. Board of Educ. of N. Plainfield, 552 Fed. Appx. 110, 113 (3d Cir. 2014)(citation and quotation omitted).  Mr. Kansky's complaint is wholly devoid of any facts suggesting that Mr. Kansky's alleged reputational injury occurred in relation to the deprivation of a recognized "plus" interest. (See Doc. 1, generally).  Further, any suggestion by Mr. Kansky that his alleged emotional distress is a sufficiently tangible "plus" interest to sustain such a claim has no basis in law. See Good, 352

Fed. Appx. at 691-92 ("psychological injury is not sufficient to satisfy the 'plus' element of the 'stigma-plus' test"). Additionally, the deprivation of the "plus" interest must be "roughly contemporaneous" to the allegedly defamatory statement. See Orelski v. Bowers, 303 Fed. Appx. 93, 94 (3d Cir. 2008).

Here, Mr. Kansky admittedly discharged his firearm in public on May 21, 2019, and he was criminally charged on June 3, 2019. (See Doc. 1, ¶¶ 10-12). Chief Coffay's purportedly stigmatizing statement about Mr. Kansky, however, was not made until on or about July 2, 2019. (See Ex. "3" to Defendants' Appendix). This comment was not roughly contemporaneous to any conceivable "plus" interest identified in the complaint, so Mr. Kansky has not pled a plausible stigma-plus claim on these bases as well.

### 3. **Chief Coffay's Statement Was Not False.**

Next, Chief Coffay's purportedly stigmatizing statement cannot serve as the predicate for a stigma-plus claim because, quite simply, it was not false. Mr. Kansky readily admits that he discharged his firearm in public. (See Doc. 1, ¶ 11). Nothing in the statement by Chief Coffay that Mr. Kansky cites is false, (see Doc. 1, ¶ 36; Ex. "3" to Defendants' Appendix), and a "truthful statement that damages one's reputation simply does not trigger any constitutional concerns." McCarthy v. Darman, No. 07-3958, 2009 WL 1812788, at *10 (E.D. Pa. June 24, 2009), aff'd, 372 Fed. Appx. 346, 351 (3d Cir. 2010); see also Lockett, 529 Fed. Appx. at 296-

97 (affirming dismissal of stigma-plus claim where the complaint did not allege sufficient facts that the statement "was substantially and materially false"); Carroll v. Lackawanna Cty., No. 12-2308, 2015 WL 5512703, at *10 (M.D. Pa. Sept. 16, 2015)(stigma-plus claim fails in the absence of "actual false and stigmatizing statements").

### 4.   Mr. Kansky's Preliminary Hearing Afforded Him Sufficient Due Process.

Finally, even if Chief Coffay's comment was stigmatizing (which it was not) and Mr. Kansky was deprived of a "plus" interest (which he was not), the stigma-plus claim still fails. The Third Circuit has never held that "damages are available as a remedy for the harm to the reputational interest in a stigma-plus claim." Otto, 704 Fed. Appx. at 55. Indeed, the Third Circuit has never explained when a name-clearing hearing would be insufficient to remedy the wrong of a damaged reputation. See id. It is for this reason that the Third Circuit in Otto found that a criminal trial affords constitutionally sufficient process to clear one's name. See id. at 54-55 (citing Graham v. City of Philadelphia, 402 F.3d 139, 147 (3d Cir. 2005)). Here, as Mr. Kansky admits, he was provided a preliminary hearing at which the charges against him were dismissed. (See Doc. 1, ¶ 15). To the extent that Mr. Kansky's Fourteenth Amendment rights were infringed by Chief Coffay's statement, the preliminary hearing was a sufficient name-clearing hearing and provided Mr. Kansky with all process due in restoring his reputation. See Otto,

704 Fed. Appx. at 55; see also Tobin v. Badamo, No. 00-783, 2000 WL 1880262, at *4 n.3 (M.D. Pa. Dec. 20, 2000)(observing that it "would seem that the plaintiffs' names were cleared at the preliminary hearing where the charges were dropped.").

Mr. Kansky has not pled a viable stigma-plus cause of action, and Count IV of the complaint should be dismissed.

### E.   Mr. Kansky Does Not State A Plausible Monell Claim Against The City.

Pursuant to 42 U.S.C. § 1983, a municipal defendant cannot be held liable under a theory of respondeat superior. See Monell v. Department of Soc. Servs. of the City of N.Y., 436 U.S. 658, 691-94, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); see also Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). "[A] § 1983 claim against a municipality may proceed in two ways.  A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice[.]'" Forrest v. Parry, 930 F.3d 93, 105 (3d Cir. 2019)(quoting Estate of Roman v. City of Newark, 914 F.3d 789, 798-99 (3d Cir. 2019)); see id. at 106 ("the avenues remain distinct: a plaintiff alleging that a policy or custom led to his or her injuries must be referring to an unconstitutional policy or custom, and a plaintiff alleging failure-to-supervise,

train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected.").

There are three (3) instances in which municipalities may be liable for the actions of their employees. McGreevy v. Stoup, 413 F.3d 359, 367 (3d Cir. 2005). First, a municipality may be liable when its employee acts pursuant to formal government policy or standard operating procedure long accepted within the government entity. Id. Second, a municipality may be liable for the actions of an employee when the employee has policy making authority rendering his or her behavior an act of official governmental policy. Id. Finally, a municipality may be liable for the actions of its employee when it has ratified the unconstitutional actions of the subordinate. Id.

The complaint does not contain any non-conclusory, factual allegations to maintain a Monell claim against the City. (See Doc. 1, generally). First, Mr. Kansky does not point to any City policy or custom that dictated Officer Harding or Chief Coffay's actions in the matter sub judice. (See id.). Nor does Mr. Kansky provide any facts to support a conclusion that any policy-making official's actions were implicated in this case. (See id.). Further, the complaint's allegations do not support a finding that the City ratified any purportedly unconstitutional conduct. (See id.). And, to the extent that Mr Kansky contends that the City failed to train its employees, he has not provided any factual support to substantiate a claim that a

23

any failure or inadequacy on behalf of the City was the product of a deliberate or conscious choice. (See id.). In short, Mr. Kansky's "allegations of a Monell claim are conclusory, and fall short of adequately alleging the elements of Monell discussed above," and his contention that the City failed to train its employees is nothing more than "a bare conclusory statement." Hammond v. City of Wilkes-Barre, No. 13-2322, 2014 WL 2592833, at *5 (M.D. Pa. June 10, 2014).

Additionally, Mr. Kansky's claims fail against the City because he has not stated an underlying § 1983 claim against any of its employees. See, e.g., Kneipp v. Tedder, 95 F.3d 1199, 1212 n.26 (3d Cir. 1996)(if no underlying constitutional violation, failure-to-train claim will not stand); Bassetti v. Boyertown Area Sch. Dist., No 17-1137, 2017 WL 3480977, at *6 (E.D. Pa. Aug. 14, 2017)("Without a stigma-plus claim, Bassetti has not alleged the underlying constitutional deprivation necessary to hold Boyertown liable under section 1983."); Ianuale v. Keyport Twp., No. 15-8256, 2016 WL 5955527, at *10 (D.N.J. Oct. 13, 2016)(malicious prosecution); Blakney v. City of Philadelphia, No. 12-6300, 2013 WL 2411409, at **13-14 (E.D. Pa. June 4, 2013)(First Amendment retaliation). All claims against the City should be dismissed.

### F.    Chief Coffay And Officer Harding Have Qualified Immunity On The Claimed Constitutional Violations.

#### 1.    There Is No Violation Of A Federal Or Constitutional Right.

"The qualified immunity doctrine 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012)(citation omitted). "In Saucier v. Katz, the United States Supreme Court established a two-part analysis for determining when qualified immunity is applicable: (1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was 'clearly established.'" Id. (citing Saucier v. Katz, 533 U.S. 194, 201-217, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)); see also Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)(relaxing the Saucier analysis by no longer requiring courts to determine the Saucier prongs in sequential order).

For reasons detailed above, Mr. Kansky has not identified any conduct by Chief Coffay or Officer Harding that violated his constitutional rights. See supra Part III.B-D. As Mr. Kansky cannot meet the first Saucier prong, dismissal on this basis is warranted.

## 2. Mr. Kanksy Cannot Meet The Clearly Established Prong.

Chief Coffay and Officer Harding are also entitled to qualified immunity on Saucier's clearly established prong. "To be clearly established, a right's contours must be 'sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it' and that 'existing precedent . . . placed the statutory or constitutional question confronted by the official beyond debate.'" Bryan v. United States, 913 F.3d 356, 362 (3d Cir. 2019)(ellipsis in original)(quoting Plumhoff v. Rickard, 572 U.S. 765, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014)). Thus, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." Mammaro v. New Jersey Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016)(citation omitted). The clearly established prong of the qualified immunity analysis requires defining "the right allegedly violated at the appropriate level of specificity," and it must be framed "in a more particularized, and hence more relevant, sense, in light of the case's specific context, not as a broad general proposition." Mann v. Palmerton Area Sch. Dist., 872 F.3d 165, 172-73 (3d Cir. 2017)(citations and quotations omitted).

Here, the specific context is Mr. Kansky twice shooting an injured raccoon along a City street in the middle of the afternoon. See, e.g., id. For qualified

26

immunity purposes, courts consider "whether the law in this context was so well-established that it would have been apparent to a reasonable" officer that charging Mr. Kansky with the crimes he was alleged to have committed would deprive him of his rights under the First, Fourth and/or Fourteenth Amendments. See Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 638-39 (3d Cir. 2015).

With respect to the retaliatory and malicious prosecution claims, given the elements of the criminal violations leveled against Mr. Kansky, it would not have been apparent to a reasonable law enforcement official that there was an absence of probable cause to charge Mr. Kansky with reckless endangerment, disorderly conduct, and the unlawful taking of a furbearer. See supra Part III.B.2. Nor would a reasonable official have believed that Mr. Kansky's 911 calls were the but-for cause of the criminal charges at issue given his discharge of his firearm. See supra Part III.C.1. The absence of any on-point authority in a similar factual scenario bolsters a finding that the question at issue was not beyond debate. See Spady, 800 F.3d at 639 (while the plaintiff does not have to produce "a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate"). Likewise, in light of the substantial authority finding that an official's conduct of yelling and screaming alone does not rise to the level of a constitutional violation, a reasonable official would not believe that the actions alleged to have been taken on December 31, 2019 would amount to a constitutional deprivation.

27

See, e.g., Keziah, 2015 WL 8488426, at *2.   Finally, in view of the Supreme Court's decision in Davis, a reasonable official would not have believed that a recognized liberty interest would have been violated by the commencement of criminal charges.   See supra Part III.D.2.   Qualified immunity is warranted on the claims alleging violations of the First, Fourth, and Fourteenth Amendments.

### G.   Mr. Kansky Cannot Recover Punitive Damages Against The City.

In the ad damnum clause to Count III of Mr. Kansky's complaint, Mr. Kansky demands punitive damages against the City.   (See Doc. 1, Count III, Wherefore Clause).   This demand must be dismissed.   See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S. Ct. 274, 869 L. Ed. 2d 616 (1981).

### H.   The § 1983 Claims Should Be Dismissed With Prejudice.

Defendants recognize that a district court in this Circuit must ordinarily provide an opportunity to amend when dismissing a civil rights case for failure to state a claim.   See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).   Leave to amend is not required, however, when doing so would be futile.   See id.   Futility is present when "the amended complaint would not survive a motion to dismiss." Budhun, 765 F.3d at 259.

Any proposed amendment to the complaint would be futile.   Specifically, probable cause existed to charge Mr. Kansky with the criminal violations at issue, so Mr. Kansky cannot survive a motion to dismiss on claims for malicious

28

prosecution and/or retaliatory prosecution.  See supra Part III.B.  Likewise, Mr. Kansky cannot plausibly allege a causal link between his calls to 911 and the filing of criminal charges against him given his intervening act of twice shooting a raccoon along a City street, nor can he demonstrate constitutionally adequate adverse action with respect to being "yelled and screamed" at by Officer Harding. See supra Part III.C.  Thus, it would be futile to allow Mr. Kansky to amend his First Amendment retaliation claims.  See Budhun, 765 F.3d at 259.  Finally, since Mr. Kansky cannot point to a false or stigmatizing statement made about him by Defendants, nor can he identify the deprivation of a constitutionally sufficient "plus" interest, there is no reason to afford Mr. Kansky the opportunity to amend his stigma-plus claim.   See supra Part III.D.  The § 1983 claims should be dismissed without leave to amend.  See Budhun, 765 F.3d at 259.

I.     **Mr. Kansky's State Law Claims Should Be Dismissed.**

   1.   **Supplemental Jurisdiction Over The State Law Claims Should Be Declined.**

Because Mr. Kansky fails to state a claim for which this Court has original jurisdiction, i.e., his § 1983 claims, supplemental jurisdiction over the remaining state law claims should be declined pursuant to 28 U.S.C. § 1367.  "Where the federal claims are dismissed before trial, the district court must decline to decide pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  Baraka v.

<u>McGreevey</u>, 481 F.3d 187, 210 (3d Cir. 2007).  Here, as there is no affirmative justification for this Court to retain jurisdiction over the state law malicious prosecution, defamation, or false light claims, those causes of action should be dismissed without prejudice.  See <u>id</u>.

### 2.  Regardless, Mr. Kansky Does Not Plead Viable State Law Causes Of Action.

Mr. Kansky purports to raise three (3) state law causes of action: malicious prosecution (Count II); false light (Count IV); and defamation (Count IV).  (<u>See</u> Doc. 1, <u>generally</u>).  Count IV is asserted against Officer Harding and Chief Coffay only, while Count II is asserted against all Defendants.  (<u>See id</u>., <u>generally</u>).  These claims should all be dismissed.

The City has immunity with respect to the state law tort claim pled here pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. §§ 8541-8542.  <u>See</u> <u>Zlomsowitch v. E. Penn Twp.</u>, No. 11-2131, 2012 WL 1569633, at *3 (M.D. Pa. May 3, 2012)(dismissing state law malicious prosecution and abuse of process claims against the defendant township "because it is immune from suit under the PPSTCA").

Moreover, Mr. Kansky fails to adequately aver the necessary elements of his state law causes of action, so dismissal of these claims is warranted on this ground as well.  For one, the state law malicious prosecution claim fails for the same reasons as the one brought under the Fourth Amendment.  <u>See</u> <u>Merkle v. Upper</u>

30

Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000)(listing elements for Pennsylvania state law malicious prosecution claim). Specifically, the complaint makes clear that probable cause existed to charge Mr. Kansky with criminal wrongdoing. See supra Part III.B. Further, the complaint is devoid of allegations that the criminal charges were filed maliciously or for a purpose other than bringing Mr. Kansky to justice. See id. The common law malicious prosecution claim should be dismissed.

Moving to the defamation claim, Mr. Kansky must allege: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. See 42 Pa. C.S. § 8343(a); see also Feldman v. Lafayette Green Condo. Ass'n, 806 A.2d 497, 500 (Pa. Commw. 2002).

The defamation claim fails for two reasons. First, as explained above with respect to the stigma-plus claim, Mr. Kansky cannot identify a specific defamatory statement by Chief Coffay or Officer Harding. (See Doc. 1, generally). Second, Mr. Kansky has not pled the abuse of a conditionally privileged occasion. (See id., generally).

31

> By statute in Pennsylvania, where a communication is subject to a defense of qualified privilege, the plaintiff in a defamation action must prove "abuse of a conditionally privileged occasion." 42 Pa. C.S. § 8343(a)(7).  In a Pennsylvania defamation case, the issue of privilege is initially a matter for judicial determination.  Dempsky v. Double, 386 Pa. 542, 547, 126 A.2d 915, 917 (1956).  "A privileged communication is one made upon a proper occasion, from a proper motive, in a proper manner and based upon reasonable probable cause." Id. at 546.  Unquestionably, the official duties of police officers require them to make statements that qualify as defamatory - accusation of a crime - whenever charges are brought.  As a result, only an abuse of that privilege can result in liability.  Furthermore, under Pennsylvania law, the potential scope of tort liability on the part of the public employee is exceedingly narrow.  Only if an officer acts maliciously or engages in willful misconduct will the defense of official immunity fail. 42 Pa. C.S. § 8550.

Trippett v. Pennsylvania, No. 16-5467, 2017 WL 4347662, at *3 (E.D. Pa. Sept. 29, 2017).  Mr. Kansky has not pled any facts to support a finding that criminal charges were initiated against him improperly, without proper motive, and without proper cause. (See Doc. 1, generally).  Thus, as in Trippett, the complaint "does not reasonably support an inference that the officer[ ] abused [his] privilege in charging Plaintiff with the [crimes] or that [his] action[ ] constituted willful misconduct." Trippett, 2017 WL 4347662, at *3.

The false light claim fails as well based on the absence of allegations "of willful misconduct or reckless disregard for falsity on the part of [Defendants]. In Pennsylvania, liability for false light invasion of privacy accrues to a person 'who

32

publishes material that is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity.'" Anderson v. Perez, 677 Fed. Appx. 49, 52 (3d Cir. 2017)(quoting Graboff v. Colleran Firm, 744 F.3d 128, 136 (3d Cir. 2014)); accord Smith v. Roberts, No. 18-1957, 2019 WL 3838316, at *4 (M.D. Pa. Aug. 15, 2019)(" Plaintiff has cited to no case law where a police officer questioning and subsequently arresting an individual in a public place is actionable as a false light invasion of privacy claim."). Mr. Kansky does not identify any material that was published about him that was not true, nor does he provide any non-conclusory allegations that suggest that Officer Harding or Chief Coffay publicized any material with knowledge or reckless disregard for its falsity.  (See Doc. 1, generally).

All of Mr. Kansky's state law claims are legally deficient and should be dismissed for failure to state a claim upon which relief can be granted.

## IV.   <u>Conclusion.</u>

Based upon the foregoing, Defendants respectfully request that their motion to dismiss be granted and the complaint be dismissed with prejudice.

Respectfully submitted,

<u>s/John G. Dean</u>
John G. Dean
Mark W. Bufalino
ELLIOTT GREENLEAF & DEAN
15 Public Square, Suite 310
Wilkes-Barre, PA 18701
(570) 371-5290

Attorneys for Defendants City of Wilkes-Barre, Richard Harding, and Joseph Coffay

DATED: February 28, 2020

## **CERTIFICATE OF SERVICE**

I, John G. Dean, hereby certify that I have caused to be served this day a true and correct copy Defendants City of Wilkes-Barre, Richard Harding and Joseph Coffay's brief in support of their motion to dismiss _via_ electronic filing and _via_ first class mail addressed as follows:

> Cynthia L. Pollick
> 363 Laurel Street
> Pittston, PA 18640

> s/John G. Dean
> John G. Dean

DATED: February 28, 2020

## **WORD COUNT CERTIFICATION**

In accordance with Local Rule 7.8, the undersigned counsel for Defendants the City of Wilkes-Barre, Richard Harding and Joseph Coffay, hereby certifies that the foregoing brief in support of Defendants' motion to dismiss contains less than 8,500 words. I have relied upon the word count feature of the word processing system which indicated that 8,021 words are contained in the foregoing brief.

s/John G. Dean_____
John G. Dean

Attorneys for Defendants City of Wilkes-
Barre, Richard Harding, and Joseph Coffay

DATED:    February 28, 2020