The Employment Law Firm
Cynthia L. Pollick, LLM                                    Attorney for Plaintiff
I.D. No.: 83826
363 Laurel Street
Pittston, PA 18640
(570) 654-9675

---

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWRENCE J. KANSKY, | : | CIVIL ACTION – LAW |
| | : | |
| Plaintiff | : | JURY TRIAL DEMANDED |
| | : | |
| v. | : | |
| | : | |
| CITY OF WILKES-BARRE, et al. | : | |
| | : | NO.   20-43 |
| Defendants | : | |

## <u>BRIEF IN OPPOSITION TO DEFENDANTS'</u>
## <u>MOTION TO DISMISS</u>

Respectfully Submitted:

By: <u>s/ Cynthia L. Pollick</u>
Cynthia L. Pollick, Esquire
Pa. I.D. No.: 83826
363 Laurel Street
Pittston, PA 18640
(570) 654-9675
pollick@lawyer.com

## TABLE OF AUTHORITIES

*Allah v. Seiverling*,
   229 F.3d 220 (3d Cir. 2000) .……………………….…………………… 15

*Anderson v. Davila*,
   125 F.3d 148 (3d Cir. 1997) .…………………….….……………….… 14, 16

*Andrews v. Scuilli*,
   853 F.3d 690 (3d Cir. 2017) .……………………….……………… 3

*Bloch v. Ribar*,
   156 F.3d 673 (6th Cir. 1998) .………………….……………………… 21

*Brown v. City of New York*,
   2004 U.S. Dist. LEXIS 25062 (S.D.N.Y. 2004) .……………………… 10

*Bristow v. Clevenger*,
   29 Fed. Appx. 813 (3d Cir. 2002) .………………….………………… 14-15

*Carbone v. City of New Castle*,
   2016 U.S. Dist. LEXIS 12885 (W.D. Pa. 2016) .…………….…………… 16

*Commonwealth v. Coon*,
   695 A.2d 794 (Pa. Super. Ct. 1997) .………………….……………… 8

*Commonwealth v. Smith*,
   447 A.2d 282 (Pa. Super. Ct. 1982) .………………….……………… 6

*Commonwealth v. Williams*,
   496 A.2d 31 (Pa. Super. Ct. 1978) .………………….……………… 4

*Coyett v. City of Philadelphia*,
   150 F. Supp. 3d 479 (E.D. Pa. 2015) .…………………….………… 22-23

*Chuy v. Phila. Eagles Football Club*,
   595 F.2d 1265 (3d Cir. 1979) .…………….…….…………….……… 28

*Doe v. C.A.R.S. Prot. Plus*,
527 F.3d 358 (3d Cir. 2008) ..................................................... 13

*Eckman v. Lancaster City*,
742 F. Supp. 2d 638 (E.D. Pa. 2010) ............................. 5

*Ersek v. Township of Springfield*,
102 F.3d 79 f. 6 (3d Cir. 1996) ............................................ 18

*FOP v. Fyfe*,
2002 U.S. Dist. LEXIS 12148 (E.D Pa. 2002) .......................... 30

*Green v. Mizner*,
692 A.2d 169 (Super. Ct. 1997) ............................................ 34

*Hassan v. City of New York*,
804 F.3d 277 (3d Cir. 2015) ............................................ 3

*Henderson v. City of Philadelphia*,
853 F. Supp. 2d 514 (E.D. Pa. 2012) ..................................... 10, 26

*Houston v. Hill*,
482 U.S. 451 (1987) ............................................... 11-12

*Koldjeski v. Colombo*,
2009 Pa. Dist. & Cnty. Dec. LEXIS 441 (CC P Lackawanna) ................ 33

*Light v. Haws*,
2005 U.S. Dist. LEXIS 44280 (M.D. Pa. 2005) ........................... 26

*Losch v. Parkesburg*,
736 F.2d 903 (3d Cir. 1984) ............................................ 10

*Memphis Cmty. Sch. Dist. v. Stachura*,
477 U.S. 299 (1986) ............................................... 21

*Miller v. Mitchell*,
598 F.3d 139 (3d Cir. 2010) ............................................ 12

*Petula v. Mellody*,
   588 A.2d 103 (Pa. Commw. 1991) ............................................ 30-31

*Pollarine v. Boyer*,
   2005 U.S. Dist. LEXIS 15425 (E.D. Pa. 2005) ........................... 30

*Schwab v. Wood*,
   767 F. Supp. 574 (D. Del. 1991) ............................................... 26

*Smith v. Wade*,
   461 U.S. 30 (1983) ................................................................. 27-29

*Spiess v. Pocono Mt. Reg'l Police Dep't*,
   2013 U.S. Dist. LEXIS 41814 ................................................... 5

*Springer v. Henry*,
   435 F.3d 268 (3d Cir. 2006) .................................................... 27-28

*Thompson v. Real Estate Mortg. Network*,
   748 F.3d 142 (3d Cir. 2014) ................................................... 2

*Weinstein v. Bullick*,
   827 F. Supp. 1193 (E.D. Pa. 1993) ......................................... 33

*Wolfe v. Fayetteville Ark. Sch. Dist.*,
   600 F. Supp. 2d 1011 (W.D. Ark. 2009) .................................. 33

The Employment Law Firm
Cynthia L. Pollick, LLM                                        Attorney for Plaintiffs
I.D. No.: 83826
363 Laurel Street
Pittston, PA 18640
(570) 654-9675

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LAWRENCE J. KANSKY,            :            CIVIL ACTION – LAW
                              :
    Plaintiff                 :            JURY TRIAL DEMANDED
                              :
    v.                        :
                              :
CITY OF WILKES-BARRE, et al.  :
                              :            NO.   20-43
    Defendants                :

## BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## POINT ONE
### Plaintiff alleged facts that show that Defendants were involved in harming Plaintiff

Plaintiff alleged and Defendant Harding admitted that he criminally charged Plaintiff; and therefore, there is no question that he was personally involved. Plaintiff specifically alleged:

28.    Defendant Officer RICHARD HARDING initiated a criminal proceeding against Plaintiff. (Doc. 14; pgs. 16-18).

Defendant COFFAY approved the charges filed by Officer HARDING when he publicly supported the filing of the criminal charges. Plaintiff specifically alleged the following:

1

29.    Defendant Police Chief JOSEPH COFFAY approved the charges filed by Officer HARDING when he publicly supported the filing of the criminal charges and stated that "… officer Richard Harding had probable cause to file the charges".
https://www.citizensvoice.com/news/hearing-set-in-raccoon-mercy-killing-1.2504033

"Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.' As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), a claimant must state a 'plausible' claim for relief, and '[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Although '[f]actual allegations must be enough to raise a right to relief above the speculative level,' *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a plaintiff 'need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

As the Third Circuit has held, "[d]espite the City's demand for more information about when, by whom, and how the policy was enacted and where it was written down, 'the *Twombly-Iqbal* duo have *not* inaugurated an

era of evidentiary pleading.' *Santana v. Cook Cnty. Bd. of Review*, 270 F.R.D. 388, 390 (N.D. Ill. 2010) (emphasis in original); *see also Twombly*, 550 U.S. at 570 (rejecting the proposition that notice pleading "require[s] heightened fact pleading of specifics")." *Hassan v. City of New York,* 804 F.3d 277, 295-296 (3d Cir. 2015). Consequently, both individual Defendants were personally involved in the pursuit of criminal charges against Plaintiff.

## <u>POINT TWO</u>
**Officer Harding personally signed the affidavit of probable cause and the criminal complaint was not approved by any lawyer
or the Commonwealth of Pennsylvania**

The criminal complaint was signed and filed by Defendant Officer Harding and not approved by Luzerne County District Attorney's Office. (See Exhibit "A" pg. 1, 3). "When an <u>officer</u> submits a sworn affidavit of probable cause, he or she 'is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." *Andrews v. Scuilli*, 853 F.3d 690, 698 (3d Cir. 2017)(emphasis added). Contrary to Defendants' argument, Plaintiff did allege that Defendants lacked probable cause. Specifically, Plaintiff alleged as follows:

> 32.    Defendant Police Officer RICHARD HARDING initiated that
> criminal proceeding without probable cause. (Doc. 14)

<u>**POINT THREE**</u>
**The affidavit of probable cause does not provide evidence that Plaintiff engaged in reckless endangerment because he did not cause serious bodily injury; and Defendant Harding omitted the fact that no one was injured**

To state a cause of action for the criminal offense of reckless endangerment an officer must have evidence of death or serious bodily harm. 18 Pa. C.S.A. § 2705.  The courts have stated that, "[s]erious bodily injury" is defined in the Crimes Code as 'Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Commonwealth v. Williams*, 496 A.2d 31, 38 (Pa. Super. Ct. 1978).

Nothing in the affidavit of probable cause notes any evidence that any person was in danger of bodily injury that created substantial risk of death or serious, permanent disfigurement or protracted loss of any bodily organ.  In fact, Defendant Harding should have noted in the affidavit of probable cause that no one was injured or believed that they would be injured, which testimony was offered at the preliminary hearing. (Exhibit "C"). Consequently, Officer Harding stating in his affidavit that witnesses were complainants and harmed by Plaintiff was false and misleading.

"Thus, a police officer has a duty to submit a truthful and accurate affidavit of probable cause. A police officer acts with reckless disregard for the

truth when he withholds information from a warrant that a reasonable person would recognize as 'the kind of thing the judge would wish to know.' ... Regarding false statements, an officer acts with reckless disregard for the truth when 'viewing all the evidence, [he] must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Eckman v. Lancaster City*, 742 F. Supp. 2d 638, 650-651 (E.D. Pa. 2010).

"As such, a reasonable jury could find by a preponderance of the evidence that the assertions and omission are material to the finding of probable cause. Thus, viewing the reconstructed affidavit in a light most favorable to plaintiffs, a genuine issue of disputed fact exists as to whether there was probable cause at the time of Lacen's arrest. Accordingly, the individual defendants' motions for summary judgment on plaintiffs' false arrest claims will be denied." *Spiess v. Pocono Mt. Reg'l Police Dep't*, 2013 U.S. Dist. LEXIS 41814, *30 (M.D. Pa. 2013).

Consequently, since Defendant Harding provided no statement in the affidavit of probable cause that showed or proved anyone was the victim of serious bodily injury and failed to include a statement attesting to the same, the omissions prove that there could not be a finding of probable cause

combined with the fact that Defendant Harding swore that there were two complainants which was false. (See Exhibit "C").

Defendants rely on the *Robinson* case, which was not a civil rights action determining whether an affidavit of probable cause was sufficient to charge a person with the crime of reckless endangerment, but rather a jury's determination that the defendant had committed the crime of reckless endangerment and the appellant court viewed the facts in favor of the verdict winner and it appears that there was no challenge to the issue of whether there was 'serious bodily injury', like in this case.

Unlike the *Robinson* case, which is non-precedential, in *Smith,* which is precedential, the Superior Court determined that "[t]here was evidence that Ronald J. Smith was holding a rifle and there was evidence from which a jury could conclude that the rifle was fired; however, there was no evidence that <u>the rifle was fired *at* Douglas Forry</u>. Just as plausible would be the conclusion that the rifle was fired into the air. There is no competent evidence from which a jury could conclude that Douglas Forry at any time was placed in danger of death or serious bodily injury. We conclude, therefore, that the evidence presented at trial was insufficient, as a matter of law, to sustain the conviction." *Commonwealth v. Smith*, 447 A.2d 282, 284 (Pa. Super. Ct. 1982).

Likewise, here the affidavit of probable cause lacks any evidence that anyone was in danger of death or serious bodily injury and reckless endangerment requires *mens rea*, which is an intent to cause harm to a person. Plaintiff never intended to cause serious bodily harm to anyone since the firing of the firearm was to save a raccoon in distress that possibly could have endangered the public if it had rabies.

Consequently, no reasonable officer would charge Plaintiff with the crime of reckless endangerment since no victim stated they were in danger nor was there any statement that the firearm was fired or pointed at someone and they were placed in danger of death of serious bodily injury. (See Exhibit "C"). Therefore, Plaintiff can show that Defendants did not have probable cause to charge him with the criminal offense of reckless endangerment.

**POINT FOUR**
**The affidavit of probable cause does not provide evidence that**
**Plaintiff engaged in disorderly conduct since he did not**
**engage in violent behavior and did not intend on**
**causing substantial harm to the public**

As noted by the Superior Court, "[e]ven if we were to determine that the 'public was affected' in this case, the Commonwealth would still be required to prove that appellant had the proper *mens rea*. That is, the Commonwealth would be required to prove that appellant specifically intended to cause serious *public* inconvenience or substantial harm to the *public,* or that

appellant persisted in disorderly conduct after reasonable warning or request to desist was made." *Commonwealth v. Coon*, 695 A.2d 794, 798 (Pa. Super. Ct. 1997)(reversing judgment finding defendant of disorderly conduct since he did not intend on causing harm by firing four (4) shots at his neighbors property).

Again, here, the affidavit of probable states nothing related to Plaintiff's intent to cause substantial harm to the public. Quite to the contrary, Plaintiff was assisting the public by attempting to eliminate a dangerous, potentially rabid animal. Moreover, Plaintiff had requested law enforcement assistance for approximately eight (8) hours before with no response from any law enforcement agency. Consequently, there is no question that Plaintiff has alleged that the omissions in the affidavit of probable cause by Defendant Harding caused him to be unlawfully charged for disorderly conduct.

**POINT FIVE**
**Defendant Harding first did not charge Plaintiff with a claim for**
**unlawful act concerning a furbearer, then he added it,**
**which shows malice only to drop it at the first hearing;**
**therefore, Defendant Harding admits**
**he did not have probable cause**

Defendants continue to argue that there was probable cause to charge

Plaintiff with the unlawful act concerning a furbearer, but Defendant Harding

admitted he did not have probable cause when he dropped the charge. (See

Exhibit "D").  Specifically, Plaintiff has alleged the following:

> 30.    On or about July 2, 2019, Defendant Harding dropped
> charges against Plaintiff related to the unlawful act concerning a
> furbearer, which proves he did not have grounds for such criminal
> charges, especially since there was no plea agreement in place.
> (Doc. 14).

Consequently, Defendants have admitted that they did not have probable

cause to file charges of unlawful act concerning a furbearer. Therefore,

Plaintiff need not address that dropped charge since Defendants withdrew it.

**POINT SIX**
**Defendant Harding had malice since he admitted that there was no**
**crime, yet still lodged forward with criminal charges; and**
**in fact added charges only to drop them voluntarily**

It is clear from Plaintiff's Complaint and Defendant Harding's affidavit of

probable cause that Defendant admittedly had no probable cause to criminally

charge Plaintiff with any of the crimes since there was no victims and there

were no allegations of seriously bodily injury.  "It is clear that the filing of

charges without probable cause and for reasons of personal animosity is actionable under § 1983." *Losch v. Parkesburg*, 736 F.2d 903, 907 (3d Cir. 1984).

As for the fourth element of claims for malicious prosecution, there is no question that Plaintiff has met that requirement since "[m]alice may be inferred from the absence of probable cause." *Henderson v. City of Philadelphia*, 853 F. Supp. 2d 514, 519 (E.D. Pa. 2012). Here, there is no question that based on Defendant Harding's affidavit of probable cause none existed for the crimes Plaintiff was charged with.

Further, Defendant Harding initially determined that Plaintiff should not be charged with a crime, than added the charge only to drop it at a hearing voluntarily shows Defendant Hardings' intent to overcharge Plaintiff and shows malice toward Plaintiff by ranking up the charges. (See Exhibits "A", "B", "C" and "D").  Unlike the case in *Brown*, which concluded, "[t]he record is barren of any evidence of a willful or malicious intent, <u>on the part of the police or prosecution, to overcharge plaintiff</u> with more serious criminal conduct than he was suspected of committing."; here the voluntary dismissal of a charge proves malicious intent on the part of Defendant Hardings. *Brown v. City of New York*, 2004 U.S. Dist. LEXIS 25062, *20-21 (S.D.N.Y. 2004)(emphasis added).

Further, Defendant Hardings' action after the preliminary hearing show

his continued malice and dislike for Plaintiff. Plaintiff alleged in his Amended

Complaint the following:

> 59. On or about December 31, 2019, at 11:45 am, Defendant Police Officer RICHARD HARDING pulled behind Plaintiff in a no parking zone and yelled and screamed at Plaintiff that he was looking for him.

> 60. Additionally, Defendant Police Officer RICHARD HARDING yelled and screamed that Plaintiff was a liar, no hero, and got lucky in full uniform with a gun in his possession.

> 61. At the time Defendant Police Officer RICHARD HARDING yelled and screamed at Plaintiff, he was legally parked and was getting out of his car. (Doc. No. 14).

Interestingly, Plaintiff did not testify at his preliminary hearing; and therefore,

the assumption that Plaintiff was lying cannot be sustained. Consequently,

viewing the facts alleged in Complaint as true, Plaintiff has stated a claim for

malicious prosecution against Defendants.

## POINT SEVEN
**Defendants apparent annoyance with Plaintiff having called 911 on several occasions and complaining about the failure to respond prompted Defendants to retaliate against him by filing false criminal charges; and Plaintiff's free speech was the but for cause**

"It is not limited to fighting words nor even to obscene or opprobrious

language, but prohibits speech that "in any manner . . . interrupt[s]" an officer.

The Constitution does not allow such speech to be made a crime.  The freedom

of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Houston v. Hill*, 482 U.S. 451, 462-463 (1987). "That the District Attorney's motive in bringing a prosecution is likely retaliatory, rather than a good faith effort to enforce the law, is supported by the lack of evidence of probable cause." *Miller v. Mitchell*, 598 F.3d 139, 153 (3d Cir. 2010). Consequently, since Defendant Harding brought charges without probable cause, his motive was retaliatory and not in pursuit of justice as required by the law.

Defendants only argue that Plaintiff has not stated the causal link between the placing of the 911 calls seeking assistance from law enforcement with no assistance until after 8 hours and his complaints of the same to the filing of charges. However, discovery will uncover that Defendant Harding took photographs of the area in question on the day it occurred (i.e. May 21, 2019) and he was aware of the constant calling to 911 made by Plaintiff. Consequently, Defendant Harding had made up his mind to charge Plaintiff at that time or he would never have taken photos. Therefore, it was a same day retaliation that occurred; and therefore, Plaintiff easily establishes causation.

Moreover, Defendant Harding did a criminal check on Plaintiff on May 24, 2019, which was just three (3) days after the incident and probably his

next day of work after the incident, which will be uncovered in discovery. Consequently, Plaintiff's allegations in Count I, which have to be viewed as the truth, undoubtedly surpass Defendants' attempts to dismiss that Count.

The Third Circuit has held, "[w]e have held temporal proximity sufficient to create an inference of causality to defeat summary judgment. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n.*, 503 F.3d 217, 232-233 (3d Cir. 2007). ... The temporal proximity, however, is sufficient here to meet Doe's minimal *prim a facie* case burden as to the causal connection element. *See e.g. Fasold v. Justice*, 409 F.3d 178, 189-90 (3d Cir. 2005) (discussing a period less than one month and noting that "a short period of time" may provide the evidentiary basis of an inference of retaliation))." *Doe v. C.A.R.S. Prot. Plus*, 527 F.3d 358, 369 (3d Cir. 2008).

Here, the completion of the affidavit of probable cause occurred on June 3, 2019, yet Defendant Harding took photos of the scene the same day the events occurred on May 21, 2019 and criminal background check on May 24, 2019. Consequently, at best Plaintiff has stated same day retaliation, at worse, the completion of the affidavit of probable cause occurred just 13 days after the events at issue. Plaintiff has established the causal component of his right to contact 911 for assistance, protest the non-response and being charged with four (4) crimes.

**POINT EIGHT**

**Plaintiff need not establish an adverse action, but rather that he was retaliated against for having accessed the court and successfully defending himself against false charges**

The adverse action component does not apply to a non-employee First Amendment retaliation claim. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." *Anderson v. Davila,* 125 F.3d 148, 162 (3d Cir. 1997). "The fact that Anderson harbored no constitutional right to be free from government surveillance does not affect his claim under this doctrine. What matters is that the Government undertook to visibly and obviously surveil him because he exercised his First Amendment rights." *Id.*

As noted by the Court in *Bristow*, a retaliation claim will lie if a citizen is retaliated against because he accessed the courts. *Bristow v. Clevenger*, 29 Fed. Appx. 813, 815 (3d. Cir. 2002). "But dismissal of the retaliation claim cannot, in our view, properly be upheld. The right of access to the courts is protected by the First Amendment, ... And retaliation for exercising a constitutionally protected right is, in itself, a violation of constitutional rights; the retaliation need not be physical in nature, or rise to the level of a substantive due process violation. See, e.g., Anderson v. Davila, 37 V.I. 496, 125 F.3d 148 (3d Cir. 1997) (retaliation consisting of surveillance). ... Judge Sloviter noted 'an action that

would otherwise be permissible is unconstitutional if it is taken in retaliation for the exercise of the right of access to the courts.' ... Thus, regardless of whether the alleged harassment was sufficiently serious to trigger substantive due process concerns, it was error to dismiss the retaliation claim on the basis of the pleadings." *Bristow v. Clevenger*, 29 Fed. Appx. 813, 815 (3d. Cir. 2002).

Here, Plaintiff accessed the courts when he successfully defended criminal charges against him with representation by his lawyer, and in direct retaliation Defendant Harding stalked him and "yelled and screamed that Plaintiff was a liar, no hero, and got lucky in full uniform with a gun in his possession". (Doc. 14). "We have recognized that the right of access to the courts . . . must be freely exercisable without hindrance or fear of retaliation." *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000). "It is well settled that prisoners have a constitutional right to access to the courts, which requires access to 'adequate law libraries or adequate assistance from persons trained in the law' for filing challenges to criminal sentences, both direct and collateral, and civil rights actions." *Id.*

Consequently, Plaintiff has direct evidence that but for him successfully defending against criminal charges by way of accessing the court to defend himself against false charges, Defendant Harding would not have stalked and called Plaintiff a liar and that he got lucky, which directly go to Plaintiff's

access to the courts; and therefore, Plaintiff has shown the causal link between the same.

The majority of cases cited by Defendant involve prisoners and not a citizen who successfully accessed the courts to defend against criminal charges and are non-precedential. Here, Plaintiff has a precedential case of the Third Circuit *Anderson v. Davila*, which overrules the non-precedential cases cited by Defendants and must be relied upon to decide this motion along with the only precedential decision relied upon by Defendants, Third Circuit case *Allah v. Seiverling*, which actually supports Plaintiff's case. Consequently, none of the non-precedential cases cited by Defendants have any application in this matter and should be ignored.

## POINT NINE
### Plaintiff has stated a stigma plus claim against all Defendants

"Relying on *Gobel v. Maricopa County*, 867 F.2d 1201, 1205 (9th Cir. 1989) — which relied on *Marrero v. City of Hialeah*, 625 F.2d 499, 516-19 (5th Cir. 1980) — Plaintiff argues that defamatory statements made "in connection" with an unlawful arrest are actionable under § 1983, since the unlawful arrest provides the necessary "plus" factor." *Carbone v. City of New Castle*, 2016 U.S. Dist. LEXIS 12885, *16 (W.D. Pa. 2016).

Contrary to Defendants' argument, Plaintiff has alleged facts that he suffered defamation along with the plus factor since he was unlawfully charged that harmed his reputation. Defendant Harding caused the false criminal charges to be announced to the public when he filed them. Specifically, Plaintiff alleged:

> 12. On or about June 3, 2019, Defendant Police Officer RICHARD HARDING charged Plaintiff with two (2) counts of recklessly engaging another person, disorderly conduct and unlawful acts concerning taking of furbearers.

> 42. Defendant Police Chief JOSEPH COFFAY stated to the press "[t]he man fired a weapon in public without regard for the safety of anyone that was around, which caused two victims to call 911 because they were alarmed." https://www.citizensvoice.com/news/hearing-set-in-raccoon-mercy-killing-1.2504033

> 43. Defendant Police Officer RICHARD HARDING dropped charges related to the unlawful concerning a furbearer, which proves he did not have grounds to charge the same and by publicly announcing that criminal charge against Plaintiff along with the other criminal charges, Plaintiff was stigmatized and made to look poorly in the eyes of the community in which he seeks to represent citizens as a lawyer.

Therefore, Plaintiff has alleged facts that Defendants made false allegations about him to the media and harmed his reputation by unlawfully charging him. The plus factor was an unlawful charging, which supports Plaintiff's due process claim for stigma-plus. Consequently, Plaintiff's due process claim survives.

## POINT TEN

### Defendant Chief Coffay's statement that Plaintiff fired a weapon in public without regard for the safety of anyone that was around, which caused two victims to call 911 was false statements since Plaintiff did not disregard safety and there were no victims

Defendants claim that Defendant Chief Coffay's statements were not false; however, Plaintiff has asserted that they are false because there were no victims and he did not disregard safety in public. Additionally, Defendant Chief Coffay also falsely stated that there was probable cause to file charges, which was false. Therefore, truth cannot be a defense to any claim of defamation, false light or stigma-plus.

## POINT ELEVEN

### Defendants made public stigmatizing statements and charged him with crimes that harmed his reputation as a lawyer

As the Third Circuit has noted, "[t]he law is unclear whether a plaintiff would be entitled to damages in addition to or in lieu of a hearing. We do note, however, that a name-clearing hearing might be insufficient to cure all the harm caused by stigmatizing government comments. For instance, injury to a plaintiff's reputation might be irreversible. *Ersek v. Township of Springfield*, 102 F.3d 79, 84 f. 6 (3d Cir. 1996)

Just as the Third Circuit opined that an injury to a plaintiff's reputation might be irreversible, here that is exactly what occurred since Defendants

stigmatizing statements and actions were publicized all over the internet and even went as far as being published in the American Bar Association, a national legal organization, for all lawyers, judges and citizens to see and think poorly of Plaintiff, which could affect his livelihood based on the negative opinion drawn by potential judges, jurors and clients.

https://www.abajournal.com/news/article/lawyer-is-charged-after-shooting-injured-racoon-near-courthouse/

The unpublished, non-precedential Third Circuit decision in *Otto* did not decide when additional damages could be recovered for a stigma-plus claim, bypassing that issue and leaving in place Third Circuit precedential law that allows for such recovery; and therefore, the *Otto* case has no application in this matter and the issue of additional damages is present here since this matter involves the reputation of a member of the legal community, who holds a rare, special position of representing citizens in their time of need and acts as an advocate for their cause.

A key difference between the *Otto* matter and here is that *Otto* involved police officers and not lawyers whose livelihood depends on their reputation to obtain potential legal clients, positive rulings by judges and jury verdicts in their favor. Consequently, applying the non-precedential *Otto* case is like comparing apples to oranges.

Moreover, a preliminary hearing does not establish innocence, which is necessary in this case since Plaintiff's profession is affected since citizens may not choose him as their legal representation based on what Defendants' have said negatively about Plaintiff and the fact that he was charged with crimes. Also, the criminal charges and statements could harm Plaintiff's license to practice law in the future since the disciplinary body may have knowledge of the fact that he was criminally charged and he may be questioned about the same during job interviews and legal proceedings.

There is no question that Defendants' criminal charges and statements will always follow Plaintiff in connection with applications to be admitted to the practice of law in other jurisdictions, and he may be denied admittance due to the same since he will have to report the false criminal charges during the extensive, detailed background check required to receive the privilege of practicing law. Moreover, the admission body or an employer may even google Plaintiff and uncover the false statements and arrest, which is a common technique used by people charged with performing a reference check.

Consequently, contrary to Defendants' arguments that he has received sufficient due process by way of his preliminary hearing and the stigma has dissipated, it is evident that Defendants' wrongdoing has damaged Plaintiff's

reputation far beyond the result that the criminal charges which were terminated in his favor since the stigmatizing reputational harm caused by Defendants continues and will impact his livelihood.

Therefore, Plaintiff should be allowed to seek damages resulting from such wrongdoing. As noted by the Sixth Circuit "("It is well established that damages are recoverable under 42 U.S.C. section 1983 for emotional distress caused by due process deprivations."). Based on the above authorities, we conclude that the Blochs' allegation of injury based on embarrassment, humiliation, and emotional distress is sufficient to be actionable under § 1983." *Bloch v. Ribar,* 156 F.3d 673, 679-680 (6th Cir. 1998).

As the Supreme Court of the United States held, "[t]o that end, compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as "impairment of reputation . . . , personal humiliation, and mental anguish and suffering." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986).

**POINT TWELVE**

**Plaintiff has stated a <u>Monell</u> claim since it is clear that the City of Wilkes-Barre failed to train even its Chief law enforcement officer to not retaliate against citizens and clearly even Chief Coffay does not know what probable cause is, thereby ensuring his underlinks have not been properly trained**

City of Wilkes-Barre failed to train and supervise even its Chief not to say stigmatizing statements about a man who was not even found guilty of a crime to the press and clearly Chief Coffay does not even understand the probable cause standard necessary to arrest someone for the crimes that require "seriously bodily injury" and there was absolutely no victims in connection with Plaintiff's situation. Further, the City of Wilkes-Barre was well aware of multiple complaints about Officer Harding and failed to train him after they became aware of the complaints.

"Our Court of Appeals has adopted a three-part test for determining whether a municipality's failure to train or supervise amounts to deliberate indifference, stating that a plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Coyett v. City of Philadelphia*, 150 F. Supp. 3d 479, 485–86 (E.D. Pa. 2015).

"Moreover, our Court of Appeals has held that a municipality can be found liable under <u>Monell</u> when it "knew about and acquiesced in a custom tolerating the tacit use of excessive force by its police officers." <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 976 (3d Cir.1996). Most relevant to this matter, our colleague Judge Padova has held that a reasonable jury could find that the City of Philadelphia "was deliberately indifferent to the systemic deficiencies in the internal investigatory and disciplinary mechanism of the PPD and to the risk that these deficiencies would result in violations of citizens' rights." *Id.*

"Put another way, the municipality's "decisions must be the 'moving force' behind an actual constitutional violation." <u>Id.</u> "The question of causation should be left to a jury "as long as the causal link is not too tenuous." <u>Bielevicz</u>, 915 F.2d at 851. And our Court of Appeals has been even more explicit on this causation question in regards to police misconduct." *Id.* "[D]istrict courts should not be so quick to toss <u>Monell</u> claims on summary judgment, even if it seems that a plaintiff will struggle to show causation between the municipal custom and the injury caused by an individual officer." *Coyett v. City of Philadelphia*, 150 F. Supp. 3d 479, 486 (E.D. Pa. 2015).

Here, there is no question that Defendant City of Wilkes-Barre has been sued on a number of occasions related to constitutional violation presumably related to the lack of training for police officers, which has just been

discovered through Defendants' Responses to Requests for Production.  (See Exhibit "F", naming plaintiffs against the City of Wilkes-Barre and/or its Police Officers (i.e. Dieter, Zavoc, Doe, Myers and Fought; See Exhibit "F").

Through discovery, Plaintiff will learn all the ways Defendant City of Wilkes-Barre failed to train and supervise its Police Officer, including Defendant Chief Coffay on probable cause and constitutional rights, such as access to the courts.  Additionally, Plaintiff will discover all the wrongdoings that have been done by City of Wilkes-Barre Police Officers that never made it to a legal proceeding.  Consequently, there is no doubt Plaintiff will obtain the evidence necessary to support his <u>Monell</u> claim.

Discovery will show that Defendant Borough of City of Wilkes-Barre had a policy and custom of illegally charging people without probable cause and it will show that may citizens have complained about the conduct of Defendant Officer Harding and the City of Wilkes-Barre turned a blind eye towards his continuing and mounting misconduct as a Police Officer since he has been employed for over 20 years.

At this point, all Plaintiff was required was to allege the failure to train and supervise caused a constitutional harm, which Plaintiff has. Specifically, he stated:

6.      Defendant, CITY OF WILKES-BARRE, failed to train its officials on how to properly assess probable cause, not to retaliate against a citizen who engaged in free speech, and not intimidate a citizen after successfully defending a criminal action.

Therefore, Defendants' motion to dismiss should be denied since this Court must believe Plaintiff's allegation as stated above.

## POINT THIRTEEN
### Qualified immunity cannot shield the individual Defendants from being held accountable for their wrongdoing

Contrary to Defendants' arguments, Plaintiff has gone beyond just alleging but actually proved that he has been the victim of multiple constitutional violations.  Plaintiff can also show that the law was clearly established at the time of Defendants' blatant wrongdoing.

As noted above, Plaintiff has shown and alleged that Defendants did not have probable cause for the three (3) criminal charges since there was no "seriously bodily injury" and there were zero victims.  Any reasonable law enforcement officer would have known he needs a victim before he can criminally charge a citizen with recklessly endangering another person and disorderly conduct.

In connection with the claims for malicious prosecution, it has been clearly established that, "[i]f the factfinder concludes that Wood acted with malice, Wood would be precluded from invoking qualified immunity because

no reasonable officer could conclude that he could maliciously initiate a criminal proceeding for a purpose other than bringing a defendant to justice without doing violence to the defendant's rights." *Schwab v. Wood*, 767 F. Supp. 574, 592 (D. Del 1991). Moreover, even the absence of probable cause allows a claim of malicious prosecution to proceed has been clearly established. *Henderson v. City of Philadelphia*, 853 F. Supp. 2d 514, 519 (E.D. Pa. 2012).

As to retaliation for free speech and access to the courts, our own Middle District has already found "[a]s the right to be free from such retaliatory conduct was clearly established at the time of the events at issue, qualified immunity will not shield defendants from this claim. See Milhouse v. Carlson, 652 F.2d 371, 373-74 (1981); Anderson v. Davilla, 125 F.3d 148, 161-63 (3d Cir. 1997)." *Light v. Haws*, 2005 U.S. Dist. LEXIS 44280, *20 (M.D. Pa. 2005)(Chief Judge Connor), *abrogated on other grounds*, *Light v. Haws*, 472 F.3d 74, 2007 U.S. App. LEXIS 22 (3d Cir. Pa. 2007).

As for the free speech related to the 911 calls seeking police assistance and complaining about the failure of respond, Defendant Harding was aware of the same since he talked with 911 and interviewed Plaintiff. It has been clearly established that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal

characteristics by which we distinguish a free nation from a police state."
*Houston v. Hill*, 482 U.S. 451, 462-463 (1987). Consequently, Plaintiff's First
Amendment claim related to being unlawfully targeted after calling 911,
complaining about the failure to respond and speaking with Defendant
Harding after the same was protected speech and Defendant Harding is not
entitled to qualified immunity since it was clearly established as of 1987 by
our Supreme Court of the United States that citizens have a right to speak to
law enforcement and be free from retaliation for the same.

### POINT FOURTEEN
**Plaintiff has established a claim for punitive damages since it is clear that Harding and Coffay acted with spiteful motive**

The Supreme Court has held that "reckless or callous disregard for the
plaintiff's rights, as well as intentional violations of federal law, should be
sufficient to trigger a jury's consideration of the appropriateness of punitive
damages." *Smith v. Wade*, 461 U.S. 30, 51 (1983). Here, Defendants action
were done with bad motive since they acted not with the justice system in
mind but rather their own power to arrest, retaliate and speak negatively to
uphold their own wrongful agenda.

The Third Circuit has held, "[a] jury may award punitive damages when
it finds reckless, callous, intentional or malicious conduct." *Springer v. Henry*,
435 F.3d 268, 281 (3d Cir. 2006). The Third Circuit stated that defendants'

conduct need only be reckless or callous, and not rise to the higher level of intentional or evil motived. *Id.* The Third Circuit has also noted that, "[p]unitive damages are commonly awarded in cases of intentional torts. There is nothing peculiar about the tort of infliction of emotional distress that should limit its victims only to compensatory damages." *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979)(affirming award of punitive damages by jury).

As the Supreme Court noted in *Smith v. Wade*, "[b]y allowing juries and courts to assess <u>punitive damages</u> in appropriate circumstances against the offending official, based on his personal financial resources, the statute [§ 1983] <u>directly advances the public's interest in preventing repeated constitutional deprivations</u>. In our view, this provides sufficient protection against the prospect that a public official may commit recurrent violations by reason of his office." *Smith v. Wade*, 461 U.S. 30, 35 n.5 (1983)(emphasis added). The Supreme Court recognized that, "[i]t was likewise generally established that individual public officers were liable for punitive damages for their misconduct on the same basis as other individual defendants." *Id.* Moreover, the Supreme Court concluded that "... reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should

be sufficient to trigger a jury's consideration of the appropriateness of punitive damages." *Id.* at 51.

The Supreme Court of the United States has held, "[t]o make its punitive award, the jury was required to find not only the Smith's conduct met the recklessness threshold (<u>a question of ultimate fact</u>), but *also* that his conduct merited a punitive award of $5,000 in addition to the compensatory award (a discretionary moral judgment)." *Smith v. Wade*, 461 U.S. 30, 52 (1983)(emphasis in original and added). Consequently, Plaintiff will be able to sustain a claim for punitive damages since Defendants acted recklessly when they false charged Plaintiff with crimes that there was no probable cause for since no victims existed and retaliated against him because he spoke out and accessed the courts to defendant baseless criminal charges.

**POINT FIFTEEN**
**Supplemental jurisdiction should be exercised and Plaintiff has stated claims of malicious prosecution, defamation and false light**

This Honorable Court should exercise its powers of supplemental jurisdiction and allow the state actions to proceed. "Among its exceptions, the Tort Claims Act provides that an employee of a local agency may be liable for an injury caused by his act "in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct . . ." 42 Pa. Cons. Stat. § 8550. Thus, a

police officer may be liable in his individual capacity if his acts constitute willful misconduct. In the context of alleged police misconduct, "willful misconduct" means that the police officers committed an intentional tort knowing that their conduct was tortious." *Pollarine v. Boyer*, 2005 U.S. Dist. LEXIS 15425, *12 (E.D. Pa. 2005). Consequently, Defendants are not shielded by immunity under state law for malicious prosecution. Contrary to Defendants' arguments, Plaintiff has stated a claim for malicious prosecution as provided above.

"Under Pennsylvania law, a defamatory statement is one that 'tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *FOP v. Fyfe*, 2002 U.S. Dist. LEXIS 12148, *6 (E.D. Pa. 2002). "A stated opinion must imply a basis in underlying defamatory facts in order to support a cause of action in defamation." *Id.*

"This, however, does not mean that there is "a wholesale defamation exemption for anything that might be labeled 'opinion.'" *Milkovich v. Lorain Journal Co.*, U.S. , , 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1 (1990). "[E]xpressions of 'opinion' may often imply an assertion of objective fact." *Id.* at , 110 S.Ct. at 2705. A defamatory communication may thus consist of a statement in the form of an opinion and is actionable if it implies an allegation

of undisclosed defamatory facts as the basis therefor." *Petula v. Mellody*, 588 A.2d 103, 108 (Pa. Commw. 1991)(reversing trial court finding that the allegations were not capable of defamatory).

The *Petula* court specifically referred to the United States Supreme Court in *Milkovich*, noting that the comment, "in my opinion John Jones is a liar" although couched in opinion "the statement may still imply a false assertion of fact". *Id.* Just as in *Petula*, here calling Plaintiff "offensive" can cause damage to his reputation and is defamatory.

In *Fyfe*, the district court concluded that statement, "Who else but an FOP unhappy with Timoney's attempts to right the Police Department would - - or could - have leaked the Brady file to the press?"), had defamatory meaning. *Id.* The Court reasoned, "the Court finds that the statement at issue is capable of defamatory meaning and that, even though it expresses the author's opinion in the form of a speculative question appearing in the Commentary section of the newspaper, it may reasonably be understood to imply the existence of a basis in undisclosed defamatory facts." *Id.*

Contrary to Defendants' argument, Plaintiff has alleged facts that he suffered defamation since he was unlawfully arrested that harmed his reputation and was widely publicized. Defendant Harding caused the false

criminal charges to be announced to the public when he filed them.

Specifically, Plaintiff alleged:

> 13. On or about June 3, 2019, Defendant Police Officer RICHARD HARDING charged Plaintiff with two (2) counts of recklessly engaging another person, disorderly conduct and unlawful acts concerning taking of furbearers.

> 44. Defendant Police Chief JOSEPH COFFAY stated to the press "[t]he man fired a weapon in public without regard for the safety of anyone that was around, which caused two victims to call 911 because they were alarmed." https://www.citizensvoice.com/news/hearing-set-in-raccoon-mercy-killing-1.2504033

> 45. Defendant Police Officer RICHARD HARDING dropped charges related to the unlawful concerning a furbearer, which proves he did not have grounds to charge the same and by publicly announcing that criminal charge against Plaintiff along with the other criminal charges, Plaintiff was stigmatized and made to look poorly in the eyes of the community in which he seeks to represent citizens as a lawyer.

Therefore, Plaintiff has alleged facts that Defendants made false allegations about him to the media and harmed his reputation by unlawfully arresting him. Consequently, his defamation and false light claims proceed. "However, in construing these statements within the broader context of Plaintiffs' Amended Complaint, the Court must construe the "general tenor of the publication" in favor of Plaintiffs. As such, the statements create the reasonable inference that they falsely implied wrongdoing and discipline problems on the part of WW. In short, discovery is needed to reveal the true

context and meaning of these statements. ... Based on the previous, Plaintiffs' defamation claim cannot be dismissed at this stage....". *Wolfe v. Fayetteville Ark. Sch. Dist.*, 600 F. Supp. 2d 1011, 1025 (W.D. Ark. 2009).

The words "opening company mail" were not an expression of opinion, but a factual allegation charging appellant with a concrete act of impropriety. *Agriss v. Roadway Express, Inc.*, 334 Pa. Super. 295, 308, 483 A.2d 456, 463, 1984 Pa. Super. LEXIS 6208, *14. "But ostensible statements of opinion which imply an assertion of objective fact may constitute actionable defamation." *Koldjeski v. Colombo*, 2009 Pa. Dist. & Cnty. Dec. LEXIS 441, *16 (Lackawanna Court of Common Pleas).

"Read in the light most favorable to the plaintiff, Bullick's statements are at least expressions of skepticism about the truthfulness of plaintiff's account of the alleged abduction and rape. While his comments may be interpreted reasonably as an expression of opinion, the content and context of the broadcast allow a reasonable listener to conclude that Bullick's skeptical opinion is based upon undisclosed defamatory facts." *Weinstein v. Bullick*, 827 F. Supp. 1193, 1198 (E.D. Pa. 1993).

Although Plaintiff was not required to knock out an affirmative defense of privilege, even if he had to, he has done the same since Defendants made false statements to the media and public when they published the criminal

charges and made blatantly false statements attempting to justify their unlawful actions. "[S]tatements made about the pleadings outside of the judicial proceedings are subject to a qualified privilege. ... An abuse of a conditional privilege occurs, however, when the publication is actuated by malice or negligence, is made for purpose other than that for which the privilege is given or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege." *Green v. Mizner,* 692 A.2d 169, 175 (Super. Ct. 1997).

"Appellant alleged that Appellees published the letter (via sending it to the media) with the knowledge that the contents thereof were false. Appellant also alleged that Appellees did so with malice or recklessness to blacken his reputation and destroy his chances of winning the mayoral election. Employing our standard of review, that is, accepting as true Appellant's pleadings and inferences drawn therefrom, we are constrained to conclude, at this juncture, that the complaint supports a conclusion that Appellees abused their conditional privilege." *Id.*

Consequently, Plaintiff has stated a claim to survive a motion to dismiss since the statements made to the media and public related to the criminal charges brought were false and not supported by probable cause as noted

above.  Therefore, all state law claims should move forward and be allowed to obtain discovery related to the same.

## POINT SIXTEEN
**Alternatively, if this Court finds somehow Plaintiff's Amended Complaint as alleged is defective, Plaintiff seeks permission to amend to cure any such defects**

Although Plaintiff believes he has stated all facts that are necessary to establish his claim, if this Court finds otherwise, Plaintiff requests permission to be allowed to amend her Complaint to cure any such defects. *Rhodes v. Diamond*, 433 Fed. Appx. 78 (3d Cir. 2011).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss.

Respectfully Submitted:

By: <u>s/ Cynthia L. Pollick</u>
Cynthia L. Pollick, Esquire
Pa. I.D. No.: 83826
363 Laurel Street
Pittston, PA 18640
(570) 654-9675
pollick@lawyer.com

## CERTIFICATE OF WORD COUNT

Cynthia L Pollick, Esquire, hereby certifies that the foregoing Brief contains 7,639 words in compliance with this Court's Order.

s/Cynthia L. Pollick
Cynthia L. Pollick, Esquire

## CERTIFICATE OF SERVICE

Cynthia L Pollick, Esquire, hereby certifies that on March 21, 2020, she served a copy of Plaintiff's Brief in Opposition on Defendants by serving a copy via ECF on Defendants' counsel:

John Dean, Esquire
Mark Bufalino, Esquire
Elliott Greenleaf & Dean
15 Public Square, Suite 310
Wilkes-Barre PA 18701

s/ Cynthia L. Pollick
Cynthia L Pollick, Esquire